United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 31, 2007**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
for the Fifth Circuit

No. 06-30133

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

VERSUS

CHARLES JOSEPH POLITO,

Defendant-Appellee.

Appeal from the United States District Court
for the Middle District of Louisiana
(03-207-D-MI)

Before BARKSDALE, DeMOSS, and PRADO, Circuit Judges.

PER CURIUM:[*]

Appellee Charles Joseph Polito ("Polito") was sentenced to five years' probation, including one year of house arrest, after pleading guilty to one count of possession of child pornography. The Government appeals the sentence on the grounds that it is unreasonable, or in the alternative, that it is an improper departure under the Guidelines. Because we determine that the sentence is reasonable as a non-Guideline sentence, we need not determine whether there was an improper departure. For the following reasons, we AFFIRM the sentence of the district court.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

When Polito was a freshman at Louisiana State University, he set up a file server on his computer that allowed users to upload and download pornographic images. Specifically, he requested users to "upload only pics involving HARDCORE PRE-TEEN GIRLS," which he described as pre-teen girls displaying their genitalia. On January 19, 1999 and March 2, 1999, a German police officer accessed Polito's file server and discovered various images that qualified as child pornography. German authorities notified American authorities about the file server. Federal agents subsequently obtained a search warrant, and on April 22, 1999, they searched Polito's dorm room and seized his computer. A forensic examination of the computer revealed a collection of hundreds of images and movie files that qualified as child pornography. Some of the pornography depicted sexual conduct with children as young as four or five years old.

Polito was not arrested subsequent to the search of his dorm room. Instead, he finished his spring semester at LSU and then returned to his family home in Lake Charles, Louisiana. During that time, he sought out a psychologist for evaluation and treatment. The psychologist, Dr. Cary Rostow, diagnosed Polito with anxiety disorder, adjustment disorder with depressed mood, depressive personality disorder with self-defeating personality traits, and features of borderline personality disorder. Dr. Rostow also noted indications of bipolar disorder, although bipolar disorder was not definitively diagnosed until 2004 or 2005. Dr. Rostow did not find any of the usual characteristics of pedophiles or predators, instead classifying Polito's problems as "impulsivity, poor judgment, and acting-out behavior." He recommended that Polito begin therapy and seek a psychiatric consult. According to Polito, he subsequently began treatment,

2

returned to school at McNeese State University, graduated in four years with honors, married, obtained gainful employment, avoided any and all criminal activity, and refrained from viewing pornography.

In December 2003, approximately four and a half years after federal agents searched his dorm room, Polito was charged with two counts of transporting and one count of possessing child pornography in violation of 18 U.S.C. § 2252(a)(1), (2), and (4)(b). He voluntarily appeared in court in February 2004 and pled not guilty. Later, Polito and the Government entered into plea negotiations, and a pre-sentence report ("PSR") was prepared with Polito's consent so that the court could evaluate whether to approve any proposed plea agreement. In July 2005, the parties informed the court that they had entered into a plea agreement under which Polito would plead guilty to the possession count in exchange for an agreement to drop the transportation counts. The PSR calculated the total offense level for the possession count alone to be 18, including a three level reduction for acceptance of responsibility and corresponding to a sentence range of 27-33 months.

Prior to sentencing, Polito filed a sentencing memorandum with the court urging it to depart downward eight levels and impose a sentence of probation with special conditions, including house arrest. The Government filed a response, opposing any deviation from the prescribed Guidelines range and objecting to the PSR's adjustment for acceptance of responsibility.

On August 16, 2005, Polito pled guilty to one count of possessing child pornography. He was sentenced the same day. At sentencing, the court (1) overruled the Government's objection to an adjustment for acceptance of responsibility; (2)

3

recalculated Polito's offense level to include an eight-level downward departure, resulting in a total offense level of 10 and a corresponding sentence range of 6-12 months; (3) stated its reasons for reducing the sentence, citing *United States v. Mares*, 402 F.3d 511 (5th Cir. 2005), for the proposition that a court must state its reasons for imposing a sentence outside of "the prescribed guideline range"; and (4) sentenced Polito to five years' probation, including one year of house arrest.[2]

The district court's stated reasons for imposing a sentence outside of "the prescribed guideline range" included: (1) the six years between the commission of the offense and sentencing plus the five years of supervision during probation would give the community a record of eleven years of Polito's conduct; (2) Polito was only eighteen years old and very immature at the time of the offense and his age and mental condition "prohibited him from acting rationally"; (3) there was no evidence that Polito would be a threat to the community or young children in the area or that Polito "ever intended to conduct predatory sexual activities with children"; (4) Polito had never been arrested for or convicted of any other offense; (5) since the offense, Polito had conducted himself in a very positive way, receiving mental health treatment, maintaining employment, and avoiding any problem with the law, which made him "atypical of many convicted of [possessing child pornography]"; (6) a term of imprisonment would interrupt Polito's mental health treatment; and (7) the sentence would serve as a deterrent to others similarly situated. The Government timely appealed Polito's sentence.

---

[2] The sentence of probation included various other conditions, including the conditions that Polito register as a sex offender, submit to searches of any computer equipment used, and obtain permission before using any "on-line" computer service.

II.

Polito's sentence was imposed post-*Booker*. Post-*Booker*, we continue to review a district court's interpretation and application of the Guidelines *de novo*. *United States v. Smith*, 440 F.3d 704, 706 (5th Cir. 2006) (citing *United States v. Villegas*, 404 F.3d 355, 359 (5th Cir. 2005)). Findings of fact are reviewed for clear error. *Id.* (citing *United States v. Creech*, 408 F.3d 264, 270 n.2 (5th Cir. 2005)). The sentence itself is ultimately reviewed for unreasonableness in light of the factors listed in 18 U.S.C. § 3553(a).[3] *Id.* (citing *United States v. Booker*, 125 S. Ct. 738, 765 (2005)).

The Court's opinions post-*Booker* have recognized three types of sentences: (1) a sentence imposed within a properly calculated Guidelines range, (2) a sentence that includes an upward or downward departure, as permitted by the Guidelines, which

---

[3] The factors include:
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed –
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for –
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;
(5) any pertinent policy statement . . . ;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . ; and
(7) the need to provide restitution to any victims of the offense.
18 U.S.C. § 3553(a).

is also a Guidelines sentence, and (3) a non-Guidelines sentence. *Id.* at 706-07. Each type of sentence is treated slightly different during reasonableness review. The first type of sentence is subject to a rebuttable presumption of reasonableness. *Id.* at 707. The second is reviewed for an abuse of discretion, *id.* (citing *United States v. Saldana*, 427 F.3d 298, 308 (5th Cir. 2005)), and "[a] district court abuses its discretion if it departs on the basis of legally unacceptable reasons or if the degree of the departure is unreasonable." *United States v. Desselle*, 450 F.3d 179, 182 (5th Cir. 2006) (internal quotation marks omitted). Finally, the third type of sentence is deemed unreasonable "where it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *Smith*, 440 F.3d at 708.

It is unclear whether Polito's sentence is a Guideline sentence with a downward departure or a non-Guideline sentence. The district court confused the matter by stating that it was downwardly departing, but then it gave some indication that the sentence was "not within the prescribed guideline range" and "must be justified by specific reasons, such as aggravating or mitigating circumstances relating to personal characteristics of the defendant, his offense conduct, his criminal history and relevant conduct or other facts specific to the case at hand." When in doubt as to whether the sentence is a properly calculated downward departure or a non-Guideline sentence, we assume the district court is imposing a non-Guideline sentence. *Smith*, 440 F.3d at 708 n.3; *United States v. Armendariz*, 451 F.3d 352, 358 n.5 (5th Cir. 2006).

As stated above, a non-Guideline sentence is reviewed for unreasonableness in light of the factors listed in § 3553(a). See *Smith*, 440 F.3d at 707-08. It is clear from the

6

record that the district court considered the § 3553(a) factors. The court specifically addressed the nature of the offense, the history and characteristics of the defendant, the seriousness of the crime, the punishment being both just and also a deterrent, the defendant's need to continue treatment in the most effective manner, and the protection of the public from further crimes by the defendant. Given the totality of the reasons stated by the district court, we do not find that this sentence is unreasonable. Furthermore, because we find that the sentence is proper as a non-Guideline sentence, we do not need to analyze whether a downward departure under the Guidelines was permissible.

AFFIRMED.